**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| ANGLERS OF THE AU SABLE, | 1:25-CV-10714 |
| Plaintiff, | COMPLAINT |
| v. | NATIONAL ENVIRONMENTAL POLICY ACT |
| UNITED STATES AIR FORCE; FRANK KENDALL III, Secretary of the Air Force; NATIONAL GUARD BUREAU; and GENERAL STEPHEN NORDHAUS, Chief, National Guard Bureau, | (Declaratory and Injunctive Relief) |
| Defendants. | |

**INTRODUCTION**

1. This is a civil action for declaratory and injunctive relief under the Administrative Procedures Act (APA), 5 U.S.C. §§ 551-706. The claims arise from defendants' violations of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370(d), and its implementing regulations.

2. This action is brought pursuant to the right of review provision of the APA, 5 U.S.C. § 702.

3. Anglers of the Au Sable ("Anglers") challenges a decision of the National Guard Bureau ("NGB") to issue an Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI"), regarding a proposed massive expansion of vertical and horizontal airspace for low-altitude training over the eastern half of Michigan's lower peninsula ("the Project"), instead of issuing an Environmental Impact Statement ("EIS").

4. Anglers' claims arise under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq*., and the Administrative Procedure Act ("APA"), 5 §§ U.S.C. 701 *et seq*.

1  -   COMPLAINT

5. Department of Defense (DoD) Directive 5105.77 established the National Guard Bureau ("NGB") as a joint activity of the DoD, and describes the organization and management of the NGB, which includes the Director of the Air National Guard ("ANG").

6. The ANG is a federal military reserve force of the U.S. Air Force ("Air Force").

7. The Michigan Air National Guard, on behalf of the NGB and ANG, prepared an EA, dated February 2, 2024, to evaluate the potential consequences to the human and natural environment that would result from the airspace expansion.

8. Defendants acted illegally by

   a. preparing an EA rather than an EIS as required by NEPA, 42 U.S.C. § 4332(2)(c);

   b. failing to adequately study and disclose the major and significant environmental effects of the Project;

   c. failing to adequately analyze alternatives to the proposal;

   d. failing to provide adequate notice and opportunity for comment; and

   e. acting arbitrarily, capriciously and with abuse of discretion, or otherwise not in accordance with the law, and without observance of procedure required by NEPA and the APA.

## JURISDICTION

9. This Court properly has jurisdiction over this action under 28 U.S.C. § 1346 (United States as defendant), as well as under 28 U.S.C. § 1331 (federal question),

2 - COMPLAINT

because this action arises under the laws of the United States, including the National Environmental Policy Act, 42 U.S.C. §§ 4331 et seq.; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

10. Judicial review is authorized by 5 U.S.C. § 706, because plaintiff is adversely affected within the meaning of relevant statutes.

11. An actual, justiciable controversy exists between plaintiff and defendants. The requested declaratory judgment relief is therefore proper under 5 U.S.C. § 703 and 28 U.S.C. § 2201.

12. Injunctive relief is appropriate under 5 U.S.C. § 703 and 28 U.S.C. § 2202.

13. Plaintiff has exhausted all administrative remedies and has no adequate remedy at law.

## VENUE

14. Venue is proper in this District under 28 U.S.C. § 1391(e)(1), because a substantial part of property that is the subject of the action is situated in Alcona, Alpena, Arenac, Cheboygan, Crawford, Huron, Iosco, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Sanilac, and Tuscola Counties in Michigan, all of which are within this District.

## PARTIES

15. Plaintiff Anglers of the Au Sable ("Anglers") is a non-profit 501(c)(3) environmental conservation organization founded in Grayling, Michigan, on January 18, 1987. The Anglers mission statement is "preserve, protect and enhance the Au Sable River System for future generations of fly fishers."

16. With 1200 members spread throughout Michigan and the Midwest, as well

as nationwide, Anglers has a nearly 40-year history of defending the watershed of the Au Sable River, one of the premier "Blue Ribbon" trout streams in the United States, as well as being a powerful economic engine for the state of Michigan. As evidence of the importance of the Au Sable to trout and fly-fishing, Trout Unlimited was founded in 1959 on the banks of the Au Sable River near Grayling, Michigan.

17. Anglers' members regularly fish, cross-country ski, hunt, camp, hike, kayak, and recreate in and along the areas affected by the proposed Project. Anglers' activities are driven by issues affecting the greater Au Sable ecosystem. To that end, Anglers has been involved in controversies involving fishing and recreational legislation; National Guard expansion and training activities at Camp Grayling; Au Sable River South Branch water level disputes with the Lake St. Helen Dam; performing water testing for PFAS and other pollutants; monitoring developments within the river corridor for compliance with Michigan Natural Rivers Act and the Natural Wild and Scenic Rivers Act; performing and funding stream habitat improvement programs; funding fisheries and environmental research; organizing fish tagging studies; funding and providing youth educational programs; funding dam removal reconnecting river branches; organizing local high school writing contests; and sponsorship of affiliated conservation organizations that further the interests of the Mainstream, East Branch, North Branch, and South Branch of the Au Sable River.

18. Anglers has a long-standing interest in the sound management of the Au Sable River system and compliance with applicable laws, regulations, and statutes.

19. Anglers would sustain injury to its interests if the Project is undertaken in the absence of a legally and scientifically sufficient analysis of its environmental impacts.

4   -   COMPLAINT

Anglers' interests and those of its members would sustain further injury because the Project will diminish aesthetic and recreational value and harm the environment in and around the Project area.

20. Anglers commented on and the Project proposal, and attempted to administratively appeal the EA and FONSI. Defendants responded that there was no administrative appeal route, but did respond to and reject Anglers' appeal points.

21. The NGB is a joint activity of the Department of Defense, pursuant to DOD Directive 5105.77.

22. The NGB, as an agency of the federal government, is required to comply with various laws and regulations, including the National Environmental Policy Act ("NEPA"; 42 U.S.C. §§ 4321 et seq.), and its implementing regulations, including the Air Force's own NEPA-implementing regulations, 32 C.F.R. Part 989.

23. The NGB is the lead agency for the EA.

24. Frank Kendall III is the current Secretary of the Air Force. He is named as a defendant in his official capacity.

25. General Stephen Nordhaus is the current Chief of the National Guard Bureau. He is named as a defendant in his official capacity.

**FACTUAL BACKGROUND**

26. The challenged Project would allow the National Guard to fly jets in low-altitude training over the eastern half of the lower peninsula of Michigan, including the Au Sable River watershed, and would dramatically increase the number and geographic scope of such flights.

27. The Michigan ANG proposes adding an additional 1,633 nautical square

miles to its current 11,042 square nautical mile Alpena Special Use Airspace Complex.

28. This expansion would stretch from east of I-75 near Grayling up to Huron Beach, through the thumb of Port Sanilac, and into Lake Huron.

29. This expansion also would include more extensive use of current and new airspace.

30. Around the same time, the Michigan National Guard proposed a doubling in size of its current Camp Grayling. Although the initial Michigan NG proposal was rejected, there is now an Memorandum of Understanding (MOU) between the state of Michigan and the Michigan NG for 52,000 additional acres of land available for use-by-Use Permit Application.

31. Near Grayling, the Project would create a new permanent, expanded airspace of 918 square miles, with major increases in the number of flights and the amount of time planes spend flying there. Some planes would fly as low as 500 feet. This permanent airspace would replace an 869 square mile temporary airspace that currently does not allow flights under 5000 feet.

32. Another flight path between the Grayling Air Gunnery Range and the Alpena Combat Readiness Center would allow planes to fly as low as 300 feet.

33. In Michigan's "thumb" area, three new low-altitude training areas would allow planes to fly at 500 feet, instead of the 6,000 feet limit currently in place.

34. Residents received far less time to comment than the military contends that it did, with public knowledge really not existing to 2022 in the Grayling area, despite the military's claims that it held "a number of public meetings." The draft EA allowed for only a 30-day comment period.

35. The EA and FONSI fail to comply with the National Environmental Policy Act (NEPA) and the Air Force, FAA, and other regulations that interpret and implement NEPA.

36. The Project is incompatible with recreational values, the outdoor economy, and real estate values of these areas.

37. The EA for the proposed expansion fails to provide a complete assessment of the potential impacts for both individual and cumulative effects within the military operations area. Direct and indirect ecological effects will result from the continued concentrated activities, including elevated sound, increased atmospheric shockwaves, discharge of chaff, discharge of flares, discharge of munitions, and electronic measures/countermeasures. Taken together, these activities will or are very likely to result in significant negative effects on both terrestrial and aquatic ecosystems.

38. The Project's FONSI and EA are insufficient under NEPA and other applicable laws for the following reasons:

   a. Flawed modeling and analysis – The EA uses a flawed population model, relying on what it claims to be a decreasing and aging population of the affected area. This fails to account for tens of thousands of seasonal residents, hikers, bikers, hunters, fishers, and outdoor lovers who support the local economies and whose lives, outdoor experience, and property values would be adversely affected by the proposal.

   b. Noise – The proposal will result in a dramatic increase in noise, with up to a tenfold increase in flights of ear-splitting jets.

   c. Pollution -- The proposal will result in an increase of various

pollutants, raining down on the headwaters of the Au Sable, one of the most famous and most-loved trout streams in the United States. That pollution will also enter the lands, air, and waters used by wildlife, permanent residents, seasonal residents, and participants in outdoor activities for which the area is justly famous and desired. The EA inadequately addresses the magnitude and effect of this increased pollution on land and water. For example, chaff cartridges, which contain aluminum foil particles or aluminum coated glass fibers, will increase by about 20%. Flares will also increase. Made with magnesium and other chemicals, which combust, flares produce a variety of tiny particles that are then inhaled, causing irritation to skin, eyes, and the respiratory system. Jet fuel combustion produces $CO_2$, CO, C, $NO_x$, $SO_x$, metals, polycyclic aromatic hydrocarbons (PAH), and other toxic and carcinogenic compounds. Unburned jet engine lubrication oil is another toxic emission.

      d.      Collection and Disposal of Waste – The EA contains inadequate information as to how or in what manner waste will be disposed with the increased airspace.

      e.      Impacts to wildlife -- Visible and audible encounters between aircraft and wildlife cause animals to exhibit stress responses. Spring and fall bird migrations are likely to coincide with training activities conducted by the Michigan ANG. There are several endangered and/or threatened species in the Project area, including but not limited to the Indiana and Northern long-eared bat, Karner blue butterfly, monarch butterfly, Kirkland warbler, bald eagle, Hine's emerald dragon fly, and Hungerford's water beetle.

8   -   COMPLAINT

   f. Cumulative Effects -- The EA inadequately addresses the cumulative effects of the proposal when combined with the Army National Guard's land expansion, instead promising that such impacts will be discussed in later NEPA documentation.

   g. Insufficient alternatives analysis -- Alternatives A, B and C presented in the EA are unacceptable, because they do not adequately mitigate the harms. The EA improperly glosses over the no-action alternative, alternative D. The EA also does not discuss alternatives of using other airspace in the United States, already in use for these training missions, that involve less sensitive environments.

   h. Inadequate notice and process – The draft EA provided for only a 30-day comment period, with no appeal route.

   i. Inadequate analysis of a variety of other impacts, including:

- The reduction in flight floors (impacting recreational and other uses);

- Dramatic increase in the number of sorties;

- Use of unmanned aircraft;

- Electromagnetic warfare and what the EA calls "military activities that use electromagnetic energy to control the electromagnetic spectrum . . . and attack an enemy";

- Increased detonation of munitions that discharge perchlorate and other toxic and carcinogenic compounds into the environment;

- Impacts to wetlands and surface waters; and

- Economic impacts from reduced property values and reduced recreational visits.

9 - COMPLAINT

## CLAIMS FOR RELIEF

### Count I

### Violation of NEPA – Failure to Prepare an Environmental Impact Statement

39. Plaintiff realleges and incorporates by reference the preceding paragraphs.

40. NEPA requires an Environmental Impact Statement (EIS) for any major federal action that may significantly affect the quality of the human environment. 42 U.S.C. § 4332(2)(c).

41. Defendants violated NEPA by preparing only an Environmental Assessment for the Project, and by issuing a "Finding of No Significant Impact" for the Project. To the contrary, the Project may significantly affect the environment, because of the impacts discussed *supra*, and one or more of the following factors:

   a. The high level of controversy surrounding the impacts of the Project;

   b. Uncertainty about potential effects;

   c. Potential impact to endangered and sensitive species and their habitat;

   d. Unique characteristics of the geographic area;

   e. Effects on public health and safety, for example, due to dramatically increased noise and pollutants.

42. These actions were taken not in accordance with law, without observance of procedures required by law, and are arbitrary and capricious within the meaning of the APA. 5 U.S.C. § 706.

43. Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## Count II

### Violation of NEPA –
### Failure to Take a Hard Look and Adequately Disclose and
### Analyze Environmental Impacts

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Even if a full Environmental Impact Statement (EIS) is not required, in an Environmental Assessment (EA) the National Environmental Policy Act (NEPA) requires federal agencies to analyze the foreseeable environmental impacts, including direct and indirect impacts, of "major federal actions." 42 U.S.C. § 4332(c)(I).

46. The Project is a major federal action as defined by NEPA.

47. An EA must provide sufficient evidence and analysis for determining whether the Project will have a significant impact on the environment.

48. The EA fails to adequately analyze the direct and indirect effects of the Project.

49. Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

50. Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## Count III

### Violation of NEPA – Failure to Consider Cumulative Impacts

51. Plaintiff realleges and incorporates by reference all preceding paragraphs.

52. In both EAs and EISes, the National Environmental Policy Act (NEPA) requires federal agencies to analyze the foreseeable environmental impacts, including

11 -   COMPLAINT

cumulative impacts, of "major federal actions." 42 U.S.C. § 4332(c)(I).

53. NEPA requires the analysis and consideration of cumulative effects which result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions.

54. The Project is a major federal action as defined by NEPA.

55. An Environmental Assessment (EA) must provide sufficient evidence and analysis for determining whether the project will have a significant impact on the environment.

56. The EA fails to mention and fails to adequately analyze the cumulative effects of the proposed land expansion by the Army National Guard, when considered together with the Project.

57. Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

58. Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## Count IV

### Violation of NEPA – Failure to Adequately Address Alternatives

59. Plaintiff realleges and incorporates by reference all preceding paragraphs.

60. In both an EA and EIS, NEPA requires the agency to "study, develop and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 102(2)(E).

61. Further, agencies must rigorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons they were eliminated.

62. Defendants failed to meaningfully consider the "no action" alternative (which is required by NEPA), and did not consider alternatives of using other airspace in the United States, already in use for these training missions, that involve less sensitive environments.

63. These actions were taken not in accordance with law, without observance of procedures required by law, and are arbitrary and capricious within the meaning of the APA. 5 U.S.C. § 706.

64. Plaintiff is entitled to recover its costs, disbursements, and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## Count V

### Violation of NEPA and the APA – Failure to Provide Adequate Notice and Public Participation

65. Plaintiff realleges and incorporates by reference all preceding paragraphs.

66. Defendants violated the public participation and notice requirements of NEPA and implementing regulations by failing to allow for meaningful and timely public involvement.

67. Defendants' actions as described above are arbitrary and capricious and/or without observance of procedure required by law; and therefore, violate the APA. 5 U.S.C. § 706(2).

## DEMAND FOR RELIEF

WHEREFORE, plaintiff prays that this Court make and enter an order:

13 -   COMPLAINT

1. Declaring that defendants violated the APA because:

    A. Defendants violated NEPA by failing to issue an EIS;

    B. Defendants violated NEPA by failing to adequately addressing impacts in the EA;

    C. Defendants violated NEPA by failing to adequately consider cumulative impacts;

    D. Defendants violated NEPA by failing to analyze an adequate range of alternatives; and

    E. Defendants violated NEPA by failing to provide adequate notice and comment opportunity.

2. Enjoin the defendants and all others acting in concert with them from carrying on or permitting any activities in furtherance of the Project until such time as the defendants prepare a supplemental environmental assessment and/or an environmental impact statement, the sufficiency of that analysis to be determined by this Court.

3. Award plaintiff its costs, attorneys' fees, and other expenses of litigation, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

4. Award such other relief as the Court deems just and proper.

Respectfully submitted March 13, 2025,

              /s/ Marianne Dugan
          Marianne Dugan, Admitted to E.D. Michigan
          Oregon State Bar No. 932568
          1711 Willamette St., Ste 301 # 359
          Eugene, OR 97401
          (541) 554-1399
          mdugan@mdugan.com

          Bruce Pregler P40292
          Facca, Richter & Pregler PC

        70 West Long Lake, Ste 120
        Troy, MI  48098
        (248) 813 9900
        bpregler@frplaw.com

15 -   COMPLAINT